IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2025 Session

## PRYOR E. BACON, III, ET AL. v. CAROLYN POYNTON SANDLIN ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 22-0404       Jeffrey M. Atherton, Chancellor**

_____

### No. E2024-00674-COA-R3-CV
_____

This action involves interpretation of a right-of-first-refusal provision originally executed in 1953 within four property deeds. Upon competing motions for summary judgment, the trial court granted summary judgment in favor of the plaintiff, who was seeking to enforce the provision as to two parcels of real property in the chains of title descending from the 1953 deeds. In the 1953 deeds, the rights of first refusal had been extended to adult descendants of the original grantor and secondarily to other title holders of the parcels. The defendants are two grandchildren of the original grantor and two trusts. The plaintiff is a great-grandson of the original grantor. The defendants filed third-party claims for declaratory judgment against all living adult descendants of the original grantor, seeking to establish that the rights of first refusal had expired. One of the third-party defendants was the plaintiff's mother, who joined in the plaintiff's motion for summary judgment. Following a hearing, the trial court granted summary judgment in favor of the plaintiff, determining that although the rights of first refusal may have expired on their own terms each time one of the properties involved had been sold, the provisions had been renewed by language in subsequent deeds that incorporated prior restrictions. The trial court ordered specific performance of the sale of the defendants' parcel to the plaintiff. The court also ordered that a 2019 deed, wherein the individual defendants had transferred a portion of another parcel to one of the defendant trusts, be set aside to allow the original grantor's adult descendants the option to exercise the right of first refusal. The trial court denied a motion to alter or amend filed by the defendants. The trial court subsequently entered a "Final Judgment," concluding that the right remained enforceable in each of the deeds. The defendants have appealed.[1] Determining that the rights of first refusal in the subject deeds have expired and are unenforceable, we reverse the trial court's grant of summary judgment in favor of the plaintiff and the court's order of specific performance against the defendants. We also reverse the trial court's denial of the defendants' motion for summary judgment as to the plaintiff's claims and accordingly grant declaratory judgment that the rights of first refusal at issue on appeal are expired and unenforceable.

---

[1] The third-party defendants to the declaratory judgment claims are not participating in this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL
SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Michael K. Alston and Caroline A. Shea, Chattanooga, Tennessee, for the appellants,
Carolyn Poynton Sandlin; Arthur Poynton, III; The Carolyn Poynton Sandlin Revocable
Living Trust, Dated February 27, 2012; and The Revocable Living Trust of Laura M.
Berglund, Dated October 29, 2015.

Elisabeth B. Donnovin, Chattanooga, Tennessee, for the appellees, Pryor E. Bacon, III, and
Jennifer Hon Bacon.[2]

## OPINION

### I.  Factual and Procedural Background

The facts underlying this action are undisputed.  In 1953, Mary E. Hon ("Mary
Hon") divided a 22.59-acre parcel of real property located in Chattanooga, Tennessee, and
conveyed a portion to each of her four living children ("the Hon Children"), along with
their respective spouses, while keeping a parcel titled in her name.  The original 22.59-acre
property, located near the Chattanooga Golf & Country Club, is known as "the Hon Hill
Property."  Each of the 1953 deeds, known as the "Hon Hill Deeds," provided a right of
first refusal ("ROFR").  This dispute focuses primarily on two parcels of real property that
were part of the 1953 conveyances:  the entire parcel now located at 4 Rivervista Drive ("4
Rivervista") and a portion of the parcel located at 2 Rivervista Drive, which portion had
been most recently conveyed to The Revocable Living Trust of Laura M. Berglund
("Berglund Trust Parcel") in October 2019.  Two of the original Hon Hill Deeds, referred
to by the trial court as the "Hon Jr. Deed" and the "Poynton Deed," are in the chain of title
for 4 Rivervista and the Berglund Trust Parcel.  Mary Hon died in 1967.

The pertinent provisions in the Hon Jr. Deed and the Poynton Deed are substantively
identical, stating as follows:

> In the event that the grantees herein desire to sell a part or the whole
> of this property to anyone other than the descendants of grantor herein, said

---

[2] Although Jennifer Hon Bacon is a third-party defendant in this action, she has filed a notice on appeal,
acting through the plaintiff's counsel, that she is joining in the plaintiff's brief and request that the trial
court's judgment be affirmed.

part or whole of said property must be first offered to the grantor herein and her adult descendants and then to all the owners of the said twenty two and fifty nine hundredths (22.59) acre, more or less, tract, exclusive of owners of lots in the subdivision in the northwest corner of said tract, at One Dollar ($1.00) above the bona fide price offered, and said offerees shall have ten (10) days to accept or reject said offer of sale.

* * *

Should any one or more of the foregoing stipulations be violated at any time by the grantees herein, their heirs or assigns, or anyone deriving title or rights from or through them, then they or either of them shall be subject and liable at the suit of the grantor, her successors or assigns, or any other owner in said twenty two and fifty nine hundredths (22.59) acre, more or less, tract, exclusive of owners of lots in said subdivision, or by the then constituted public authorities, to be enjoined by proper process from violating this contract, and shall be liable for costs and reasonable attorney's fees incident to such injunction proceedings, which costs and attorney's fees are agreed upon as liquidated damages, and shall be liable for such other and additional damages as may accrue.

The entire contract between the parties hereto is stated in this deed, and the restrictions and limitations are solely for the benefit of the grantor, and the question of further development, either of the property herein conveyed, or the properties of the grantor, or of other improvements, is no part of the consideration, to all of which the purchasers agree.

(Paragraph numbering omitted.)

The plaintiff, Pryor E. Bacon, III, filed a complaint in the Hamilton County Chancery Court ("trial court") on June 8, 2022, naming as defendants: Carolyn Poynton Sandlin; Arthur Poynton, III; and The Revocable Living Trust of Laura M. Berglund, Dated October 29, 2015 ("the Berglund Trust"). Mr. Bacon is an adult great-grandchild of Mary Hon. Ms. Sandlin and Mr. Poynton (collectively, "Individual Defendants"), who are siblings, are adult grandchildren of Mary Hon. Mr. Bacon sought to enforce the ROFRs in the Hon Hill Deeds on behalf of himself; the other adult descendants of Mary Hon ("the Hon Adult Descendants"), with the exception of Individual Defendants; and the non-descendant owners of portions of the Hon Hill Property ("the Hon Hill Neighbors"). Mr. Bacon alleged that Individual Defendants had violated the ROFR provision by (1) entering into an agreement to sell the Berglund Trust Parcel to the Berglund Trust for the amount of $30,000 without giving notice to the Hon Adult Descendants or Hon Hill Neighbors and

(2) entering into a written contract on August 13, 2020, with Wilson Clements and Emily Evitt, neither of whom was a Hon Adult Descendant or a Hon Hill Neighbor, to sell 4 Rivervista for the amount of $1,000,000 without giving notice to the Hon Adult Descendants or Hon Hill Neighbors.

Mr. Bacon averred that Individual Defendants had refused his offer, made initially in November 2020 and more formally in December 2020, to purchase 4 Rivervista for $1,000,001 and his request that they send notice to the other Hon Adult Descendants of their right to make offers. In his complaint, Mr. Bacon listed the individual Hon Adult Descendants and Hon Hill Neighbors to his knowledge, approximately forty people in all. He urged that although all were "proper parties" to the suit, none were necessary or indispensable parties under Tennessee Rule of Civil Procedure 19.

Mr. Bacon alleged breach of contract against Individual Defendants, and he asserted that specific performance was the proper remedy. Concerning 4 Rivervista, Mr. Bacon requested an order directing specific performance as follows:

Mr. Bacon III and the other Adult Hon Descendants are entitled [to] entry of judgment directing [Individual Defendants] to: (a) give the Adult Hon Descendants 10-days' written notice of their right to purchase 4 Rivervista for $1,000,001 on the terms and conditions of the Clements/Evitt Contract consistent with the Hon Jr. Deeds and the Poynton Deed and (b) sell 4 Rivervista for $1,000,001 on the terms and conditions of the Clements/Evitt Contract consistent with the Hon Jr. Deeds and the Poynton Deed to the Adult Hon Descendant who exercises the right or to the highest bidder among them if more than one Adult Hon Descendant exercises such right.

In the event that no Adult Hon Descendants exercise such right, the Hon Hill Neighbors are entitled to the same remedy.

Concerning the Berglund Trust Parcel, Mr. Bacon requested that the trial court declare the contract and deed transferring the parcel to the Berglund Trust void. He further requested an order granting specific performance and directing Individual Defendants to give notice to the Hon Adult Descendants (and in turn the Hon Hill Neighbors) of their right to purchase the Berglund Trust Parcel for $30,001 or the amount of the highest bid. Mr. Bacon stated that he was ready to purchase 4 Rivervista for $1,000,001 and the Berglund Trust Parcel for $30,001. Mr. Bacon requested temporary injunctions enjoining Individual Defendants from selling either 4 Rivervista or the Berglund Trust Parcel pending the outcome of this matter. He also requested costs and reasonable attorney's fees for proceedings related to defending the ROFR.

Mr. Bacon attached to his complaint deeds and other documents related to the chain of title for each of the Hon Hill Properties. He also attached a letter sent by Mr. Poynton, through counsel, to the Hon Adult Descendants on August 4, 2021, approximately one year after Individual Defendants had entered into the Clements/Evitt purchase and sales contract for 4 Rivervista. Mr. Poynton had stated in this letter:

As many of you know, Carolyn Sandlin and I now own our mother's property at 4 Rivervista Drive on The Hill where our grandmother, Baboo, and our parents were born. We now wish to sell this property with the expectation that the buyer will raze the house and build their "dream" home.

As we discussed after the Shareholder Meeting on July 27, 2021, when Baboo subdivided the bulk of The Hill and deeded portions to her children in 1953, she placed certain restrictions in the deeds of transfer. We believe that our parents and our generation have always considered these restrictions to apply to, and end with, our parents. In other words, Baboo intended only to protect the "family compound" atmosphere of The Hill during her and her children's lifetimes.

It is our further belief that because sales of property on The Hill since Baboo's death have never strictly adhered to these restrictions, they no longer apply.

Nevertheless, in our attempt to sell our mother's property, we are advised that the language of the deed restrictions is so broad as to be perpetual in nature and continues to apply to this day to all properties deeded in 1953. In other words, the restrictions continue to encumber the properties until the Second Coming and the end of the world as we know it.

Among the original restrictions is the requirement that before any property deeded in 1953 is sold to someone other than Baboo's adult descendants, it must first be offered to Baboo, then to her adult descendants, then to the present owners of the rest of the properties. All of those people would have the right to acquire the property for the acceptable purchase price offered by a third party plus $1.00. At present, forty people or more have this acquisition right.

Believing these restrictions to have terminated with our parents' generation, Carolyn and I have attempted to market the property over the past year and a half. It being a prime property and probably the last buildable lot

overlooking the country club, there have been interested parties, but all have declined to proceed on learning of the onerous perpetual restrictions.

As Carolyn is the last family member still living on The Hill and wishes to preserve the ambiance we all enjoyed growing up, we have added restrictions to our mother's property addressing no further subdivision, single-family only, and home size.

As our family has been in residence on The Hill for nearly two hundred years, we would both be very pleased to welcome you back. We wish to avoid, however, any potential conflict between or among the cousins. With that in mind, this letter is being sent by our attorney, who will receive and process any responses.

If any of you are interested in purchasing this property, knowing that the restrictions will apply to you and your descendants, as well, please submit your offer[.]

Mr. Bacon also attached to his complaint an offer extended by Mr. Bacon's mother, Jennifer Hon Bacon, on September 11, 2021, to purchase 4 Rivervista for $1,000,000, and a letter sent by Individual Defendants' counsel in October 2021, giving notice to one of the Hon Hill Neighbors, that 4 Rivervista was available for purchase pursuant to the ROFR.

Individual Defendants filed an answer and counterclaim on August 12, 2022. They denied Mr. Bacon's legal conclusions concerning the ROFRs in their deeds and denied having committed breach of contract. Individual Defendants made several corrections to Mr. Bacon's explanation of the chains of title and the Hon Adult Descendants' relationships, and they submitted their own list of Hon Adult Descendants. Individual Defendants admitted that Mr. Bacon had "expressed interest" in purchasing 4 Rivervista for $1,000,001 and that they had not sold it to him. They denied Mr. Bacon's allegations that they had "refused" to sell 4 Rivervista to him or had refused to give notice to Hon Adult Descendants. Individual Defendants acknowledged that they had sent letters to the Hon Adult Descendants and to five Hon Hill Neighbors notifying them of the ROFR and their intention to sell 4 Rivervista. Individual Defendants raised affirmative defenses of failure to state a claim upon which relief could be granted, waiver, estoppel, abandonment, laches, failure to mitigate damages, and the rule against perpetuities.

In their counterclaim, Individual Defendants referenced their affirmative defenses and a third-party complaint they had contemporaneously filed seeking declaratory relief against the Hon Adult Descendants and Hon Hill Neighbors. Individual Defendants requested a judgment declaring that the ROFRs had expired and were unenforceable

because the ROFRs (1) were executed solely for the benefit of the grantor, Mary Hon, and purportedly expired when she died; (2) were an unreasonable restraint on alienation; (3) had been abandoned via various conveyances to individuals who were not Hon Adult Descendants; and (4) violated the rule against perpetuities pursuant to Tennessee Code Annotated § 66-1-202 (West July 1, 2024, to current). Individual Defendants attached copies of deeds related to their chains of title.

The Berglund Trust concomitantly filed an answer and counterclaim to Mr. Bacon's complaint, acknowledging the 2019 transfer of the Berglund Trust Parcel but denying that the transfer violated the applicable ROFR. In its counterclaim, the Berglund Trust requested declaratory judgment predicated on the same arguments as those set forth by Individual Defendants. The Berglund Trust also filed a third-party complaint, requesting declaratory judgment that the Hon Adult Descendants and the Hon Hill Neighbors did not have an enforceable ROFR as to the Berglund Trust Parcel.[3] On September 22, 2022, the trial court entered an agreed temporary injunction, pursuant to Tennessee Rule of Civil Procedure 65.04, enjoining Individual Defendants from "selling, conveying, or otherwise transferring" 4 Rivervista and enjoining the Berglund Trust from "selling, conveying, or otherwise transferring" the Berglund Trust Parcel during the pendency of this action.

Mr. Bacon filed timely answers to the counter-complaints filed by Individual Defendants and the Berglund Trust, denying that they were entitled to declaratory judgment. Mr. Bacon also asserted that Individual Defendants did not have standing to bring their third-party complaints. Specifically regarding a parcel located at 6 Rivervista Drive ("6 Rivervista"), Mr. Bacon averred that Individual Defendants did not have standing to bring a claim for declaratory judgment because in February 2012, Ms. Sandlin had conveyed a large portion of 6 Rivervista to the Carolyn P. Sandlin Revocable Living Trust ("Sandlin Trust"). On October 12, 2022, the trial court entered an agreed order joining the

---

[3] With the exception of Jennifer Hon Bacon, who subsequently joined Mr. Bacon in filing a summary judgment motion, the following are the third-party defendants named in the third-party complaints filed by Individual Defendants and the Berglund Trust: Elizabeth Nelle Bacon; Sally Corinne Bacon; The Estate of Wesley Cash; John Donnelly, Jr.; Kelli Donnelly; Natalie Snodgrass Fields; Elizabeth Lynn Folsom; Charles O. Hon, IV; Charles O. Hon, V; Emily Nelle Hon; Mary Kathleen Hon; Philip Morson Hon, Jr.; Mary Alexandra Hon Huffaker; Alyson Lee Rollins Krix; Margaret Bacon Mercer; Martha Snodgrass Mulvaney; Christopher Poynton; Helen Paige Rollins Puckett; Charles Andrew Rollins; Susan Hon Rollins; David Sandlin; Frazier Joshua Beck Sandlin; Daniel A. Seeger; Jonathan Seeger; Margaret Snodgrass Seeger; Brandon D. Snodgrass; Thomas J. Seeger; Dawn Shea; Owen Shea; John Douglas Snodgrass; William B. Snodgrass; William Edward Snodgrass, III; William Edward Snodgrass, IV; John Thornton; and Eileen Thornton. Owen Shea, Jr., in his capacity as trustee of the S & H Trust, and John C. Thornton, Jr., were later joined via separate agreed orders. Individual Defendants and the Berglund Trust subsequently voluntarily dismissed Dawn Shea from this matter, and the trial court entered an agreed order accepting a waiver of any rights of first refusal held by John Donnelly, Jr., and Kelli Donnelly. Because none of the third-party defendants are participating on appeal, further procedural history related specifically to the third-party defendants has been omitted from this Opinion.

Sandlin Trust, with Carolyn Poynton Sandlin as its sole trustee, as a counter-plaintiff and third-party plaintiff seeking declaratory judgment that the ROFRs had expired and were unenforceable. The order also directed that Mr. Poynton be removed as a party with respect to the claim in the third-party complaint regarding 6 Rivervista.

On January 30, 2023, the Berglund Trust filed a motion for summary judgment, requesting that Mr. Bacon's claim be dismissed with prejudice and that the Berglund Trust's request for declaratory judgment be granted. Individual Defendants, joined by the Sandlin Trust, filed a motion for summary judgment on the same day and with the same requests for relief as in their declaratory judgment claims.

On March 16, 2023, Mr. Bacon, now joined by Jennifer Hon Bacon, in her role as a third-party defendant (collectively, "the Bacons"), filed a motion for summary judgment, along with responses to the summary judgment motions filed by Individual Defendants, the Sandlin Trust, and the Berglund Trust. The Bacons argued that they were entitled to summary judgment in favor of their breach of contract claim and dismissal of the declaratory judgment claims filed by Individual Defendants, the Berglund Trust, and the Sandlin Trust. The Bacons asserted that the ROFRs originally provided by Mary Hon's conveyances remained in effect, the ROFRs were not an unreasonable restraint on alienation, the ROFRs were not ambiguous, and the rule against perpetuities did not apply. Specifically regarding the Berglund Trust Parcel, the Bacons argued that the issue of whether the ROFR was enforceable was not ripe for declaratory judgment because no offer had been made on that property. The Bacons attached to their motions deeds and other documents related to the chains of title for the various properties, as well as their own affidavits.

Individual Defendants, the Sandlin Trust, and the Berglund Trust (collectively, "Defendants") subsequently filed separate responses opposing the Bacons' motions for summary judgment as to each of their respective claims and a combined response as to the Bacons' complaint. The Bacons filed replies. Defendants then filed replies to the Bacons' responses to their summary judgment motions. All parties participating on appeal agreed at this point that there were no genuine issues of material fact outstanding that would preclude summary judgment.

Following a hearing on the competing summary judgment motions, the trial court entered a "Memorandum Opinion and Order" on September 6, 2023, granting summary judgment in favor of the Bacons and denying Defendants' summary judgment motions. The court determined that "the ROFRs as set forth in the Hon Jr. Deed and the Poynton Deed are enforceable in the current deeds for 4 Rivervista and the Berglund Trust Parcel such that Mr. Bacon is entitled to exercise the right of first refusal to purchase the two parcels of property." The trial court further determined that the language of the ROFRs is

not ambiguous and that the ROFRs do not constitute an unreasonable restraint on alienation because they "are a matter of contract." Additionally, the court found that the "plain meaning" of the term "adult descendants" is "any descendant of Mary E. Hon who has reached the age of 18 at the time the ROFR in question is triggered."

In granting summary judgment in favor of the Bacons, the trial court concluded that Mr. Bacon was entitled to the relief of specific performance. The court directed:

> If Mr. Bacon is the only adult descendant of Mary E. Hon that has offered $1.00 above the bona fide offer concerning 4 Rivervista, he shall be entitled to specific performance;
>
> and
>
> The deed transferring the Berglund Trust Parcel to Robert and Laura Berglund is set aside to allow the adult descendants of Mary E. Hon the option to exercise the right of first refusal.

(Paragraph numbering omitted.)

On October 4, 2023, Defendants filed a motion to alter or amend the Memorandum Opinion and Order, requesting that the trial court "narrow the scope of the relief granted to [the Bacons] to reconcile the award with the findings of law elsewhere in the Opinion and Order" and "lend clarity as to the procedural operation of the rights of first refusal contained in the Hon Hill Deeds." Specifically, Defendants argued that the proper remedy would be to extend the option to exercise the right of first refusal on 4 Rivervista to all the Hon Adult Descendants. Defendants also requested instructions regarding the procedures to be followed in extending the ROFR to the Hon Adult Descendants for both parcels involved, including the procedure to follow if competing bids were tendered. Mr. Bacon filed a response opposing Defendants' request that the ROFR be extended to all Hon Adult Descendants in relation to 4 Rivervista. He argued, *inter alia*, that Individual Defendants lacked standing to challenge the trial court's decision that they must sell 4 Rivervista specifically to him because they would not be harmed by the sale. Mr. Bacon did acknowledge that procedural clarifications would be helpful.

Following a hearing, the trial court entered an order on November 27, 2023, denying the motion to alter or amend except for the correction of a clerical error pointed out by the parties and a statement of two clarifying instructions. The court directed:

a.  that Ms. Sandlin and Mr. Poynton must sell 4 Rivervista to Mr. Bacon for $1,000,001 on the terms and conditions of the Clements/Evitt Contract and

b.  if more than one Adult Hon Descendant exercises the right to buy the Berglund Trust Parcel for $30,001, Ms. Sandlin and Mr. Poynton must sell the Berglund Trust Parcel to the highest bidder among the Adult Hon Descendants who exercise the right.

In subsequent orders, the trial court disposed of the remaining claims. In the final judgment, entered on April 8, 2024, the court found that the ROFRs were enforceable in each deed at issue for various reasons specific to the individual chains of title. The court incorporated its findings from the September 2023 Memorandum Opinion and Order. The court delineated a specific procedure for Defendants to give notice to the Hon Adult Descendants of the option to purchase the Berglund Trust Parcel. Concerning Defendants' contractual obligations as to the Berglund Trust Parcel, the court directed:

The Berglund Trust and its trustee(s) are contractually obligated to follow the terms of the Hon Jr. ROFR with respect to its property at 2 Rivervista if and when they accept a bona fide offer to sell 2 Rivervista or a portion thereof. The Berglund Trust and its trustee are not obligated to follow the terms of the Hon Jr. ROFR with respect to a gratuitous transfer of 2 Rivervista or a portion thereof. The Berglund Trust and its trustee are not required to include the Hon Jr. ROFR in any future deed(s) transferring title to 2 Rivervista or a portion thereof in any sale of 2 Rivervista or a portion thereof but they must include the Hon Jr. ROFR in any future deed(s) gratuitously transferring title to 2 Rivervista or a portion thereof.

In the final judgment, the trial court also lifted the temporary injunction barring Defendants from transferring 4 Rivervista and the Berglund Trust Parcel. Pursuant to the applicable provision in the Hon Hill Deeds, the court awarded to the Bacons $40,000 in reasonable attorney's fees, plus post-judgment interest, "incurred through entry of the September 22nd Order" granting injunctive relief. Defendants timely appealed.

II. Issues Presented

Defendants have presented two issues on appeal, which we have restated slightly as follows:

1.  Whether the trial court erred by granting summary judgment in favor of the Bacons upon finding that Mr. Bacon, the living descendants of

Mary Hon who are over the age of eighteen, and the owners of the Hon Hill Property hold valid and enforceable ROFRs to purchase Defendants' property.

2. Whether the trial court abused its discretion by awarding to Mr. Bacon specific performance requiring Individual Defendants to sell 4 Rivervista to him for $1,000,001 when the options to exercise the ROFRs had not been offered to all Hon Adult Descendants.

The Bacons have presented the following additional issue, which we have summarized as follows:

3. Whether the appeal of the 4 Rivervista ruling should be dismissed without consideration of the merits because Individual Defendants allegedly have not been harmed by the ruling and therefore do not have standing to challenge it.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific

citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

## IV. Standing

The Bacons contend that Individual Defendants do not have standing to appeal the trial court's decision that they must sell 4 Rivervista to Mr. Bacon because they cannot

demonstrate any harm caused by the decision. The Bacons assert that the Hon Adult Descendants are the only individuals potentially harmed by the decision and then only if they had intended to submit an offer to purchase 4 Rivervista. The Bacons further assert that Individual Defendants do not have standing to represent the Hon Adult Descendants and that the Hon Adult Descendants had waived their right to offer to purchase 4 Rivervista by failing to act once they received notice of the Clements-Evitt Contract and Mr. Bacon's offer. Individual Defendants respond that they have maintained standing to challenge the court's decision because by directing them to sell specifically to Mr. Bacon, the decision limits their right to freely dispose of their property.

Mr. Bacon initially raised this standing argument in his response to Defendants' motion to alter or amend the Memorandum Opinion and Order. Defendants had requested that the trial court amend the order to allow them an opportunity to extend the option to make an offer on 4 Rivervista to all the Hon Adult Descendants. In its order denying this portion of Defendants' motion to alter or amend, the trial court found no "clear error of law" in the order and determined that the motion "was not based on new evidence or a change in law" and that the alteration was not "necessary to prevent injustice."[4] The court did not directly address Mr. Bacon's standing argument. Because standing is "one of the justiciability doctrines that guide courts in determining whether to hear and decide a particular case," we will address the Bacons' standing argument as a threshold issue. *See Case v. Wilmington Trust, N.A.*, 703 S.W.3d 274, 281 (Tenn. 2024).

As our Supreme Court has explained:

The standing inquiry determines whether a particular litigant is entitled to have the court decide the merits of his or her dispute. *City of Memphis v. Hargett*, 414 S.W.3d 88, 98 (Tenn. 2013); *Am. C.L. Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). "Grounded upon concern about the proper—and properly limited—role of the courts in a democratic society, the doctrine of standing precludes courts from adjudicating an action at the instance of one whose rights have not been invaded or infringed." *Darnell*, 195 S.W.3d at 619 (internal citations and quotation marks omitted). Without standing and other closely related justiciability doctrines, "the courts would be called

---

[4] Although Defendants filed their motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59.04, they acknowledged that if the trial court found that the Memorandum Opinion and Order was not a final order, they were alternatively seeking relief pursuant to Tennessee Rule of Civil Procedure 54.02. The trial court considered the motion pursuant to Rule 54.02, which provides that a non-final order "is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." *See Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) ("Cases analyzing Rule 59.04 motions to alter or amend . . . offer some guidance in determining the standard for revising non-final orders." (quoting *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000))).

upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). A party's standing may turn on the nature of the claim, but the likelihood of success on the merits does not factor into the standing inquiry. *Fisher v. Hargett*, 604 S.W.3d 381, 396 (Tenn. 2020).

*Id.* "To establish standing, a plaintiff must show three 'indispensable' elements 'by the same degree of evidence' as other matters on which the plaintiff bears the burden of proof." *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006) (quoting *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002)). The plaintiff must show (1) "a distinct and palpable injury: conjectural or hypothetical injuries are not sufficient," (2) "a causal connection between the claimed injury and the challenged conduct," and (3) the alleged injury is capable of being redressed by a favorable decision of the court. *Darnell*, 195 S.W.3d at 620.

In *Case*, our Supreme Court clarified the distinction between constitutional standing under the Tennessee Constitution when private rights are involved rather than public rights, concluding in pertinent part:

> In summary, (1) the open courts provision requires litigants to allege injury to a recognized legal right, and (2) the separation of powers provision requires litigants in public rights cases to allege an injury in fact not common to the public. *See* Tenn. Const. art. I, § 17; *id.* art. II, §§ 1-2; *Barnes* [*v. Kyle*], 306 S.W.2d [1,] 4 [(Tenn. 1957)]; *Darnell*, 195 S.W.3d at 620. A simpler way to say this is that all claims must allege an "injury." In private rights claims, injury in law is sufficient.

*Case*, 703 S.W.3d at 291. The *Case* Court determined that the plaintiff did "allege injury to a cognizable legal right" because he alleged "injuries to his contract rights and property rights—injuries that our law recognizes as grounds for remedy." *Id.* at 292 (citing Tenn. Const. art. I, § 17).

The Bacons posit that the only harm to Individual Defendants would be in having to sell 4 Rivervista, not having to sell to Mr. Bacon. However, Individual Defendants contend that the trial court's judgment enforcing the ROFR limits their property rights because it requires them to sell 4 Rivervista to a specific person. We agree. As this Court has explained:

The right of first refusal, or first right to buy, is not a true option but is a valuable prerogative. It <u>limits the right of the owner to dispose freely of his property</u> by compelling him to offer it first to the party who has the first right to buy. Nor may the owner accept an offer made to him by a third party. 2 S. Williston, *Williston on Contracts* § 1441A, at 948-50 (1968).

*Johnson v. Herren*, 1988 WL 119278, at *4 (Tenn. Ct. App. Nov. 10, 1988) (emphasis added).

Upon careful review, we determine that because the trial court's judgment enforcing the ROFR mandates how Individual Defendants may dispose of 4 Rivervista, their property interest is injuriously affected by the judgment. *See Clark v. Perry*, No. 02A01-9704-CH-00080, 1998 WL 34190562, at *7 (Tenn. Ct. App, Mar. 19, 1998) ("A party is 'aggrieved' [by an order] when he has an interest recognized by law which is injuriously affected by the order, or when his property rights or personal interests are directly affected by operation of the order."). Individual Defendants have standing to challenge the judgment directing them to sell 4 Rivervista to Mr. Bacon. We further determine that the Bacons' arguments regarding Individual Defendants' lack of standing to represent the Hon Adult Descendants and whether the Hon Adult Descendants had waived their ROFR rights to 4 Rivervista are pretermitted as moot.

## V. Enforceability of ROFRs

Defendants contend that in granting summary judgment in favor of the Bacons, the trial court erred by finding that Mr. Bacon, the living descendants of Mary Hon who are over the age of eighteen, and the owners of the Hon Hill Property hold valid and enforceable ROFRs to purchase Defendants' property. Defendants argue that the ROFRs expired either with the 1967 death of Mary Hon, as the grantor in the Hon Hill Deeds, or "at the latest" with the November 2011 death of Margaret Hon Snodgrass, the last surviving child of Mary Hon. They further argue that because Individual Defendants are not among the original grantees (the Hon Children and their spouses) of the Hon Hill Deeds, the Hon Hill ROFRs were not triggered by Individual Defendants' decisions to sell the Berglund Trust Parcel or contract to sell 4 Rivervista. Defendants also contend that the provision in the Hon Hill Deeds that "restrictions and limitations [were] solely for the benefit of the grantor" creates an ambiguity when read together with the rights afforded "adult descendants." Defendants maintain that "[a]t the least, these issues present ambiguities" that should be decided against Mr. Bacon as the party seeking enforcement of the ROFRs. The Bacons counter that the trial court properly granted summary judgment upon finding no ambiguity in the operation of the phrase, "adult descendants," and upon finding the subject ROFRs to be enforceable.

Regarding interpretation of deeds, this Court has explained:

> "The overriding purpose of any deed interpretation is the determination of the grantor's intent of the conveyance." *Hall v. Hall*, 604 S.W.2d 851, 853 (Tenn. 1980) (citing *Collins v. Smithson*, 585 S.W.2d 598 (Tenn. 1979)); *see also Quarles v. Arthur*, 33 Tenn. App. 291, 231 S.W.2d 589, 591 (1950). In ascertaining the grantor's intent, we begin with the language of the deed itself and the circumstances surrounding its creation. *Hutchison v. Bd.*, 194 Tenn. 223, 250 S.W.2d 82, 84 (1952); *LaRue v. Greene County Bank*, 179 Tenn. 394, 166 S.W.2d 1044, 1048 (1942). In construing the language in a written instrument, "the words expressing the party's intention should be given the usual, natural and ordinary meaning." *Ballard v. N. Am. Life & Casualty Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983) (citing *Moore v. Life & Casualty Ins. Co.*, 162 Tenn. 682, 40 S.W.2d 403 (Tenn. 1931)). In determining what estate the deed purports to convey, we attempt to constrain our analysis to the four corners of the instrument without regard to the technical and formal divisions contained therein. *Mountain City Missionary Baptist Church v. Wagner*, 193 Tenn. 625, 249 S.W.2d 875, 876 (1952).

*Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 586-87 (Tenn. Ct. App. 2005). Additionally, a right of first refusal is a contractual right, and when interpreting contracts, we apply a *de novo* standard comparable to that of interpreting deeds. *See Dick Broad.*, 395 S.W.3d at 659 ("We initially determine the parties' intent by examining the plain and ordinary meaning of the written words that are 'contained within the four corners of the contract.'" (quoting *84 Lumber Co. v. Smith,* 356 S.W.3d 380, 383 (Tenn. 2011))). Accordingly, we begin our analysis of the subject ROFRs with the plain language of the deeds.

### 1. Adult Descendants

Defendants posit that "adult descendants" in the ROFRs refers only to the four Hon Children, who were all adults when Mary Hon created the ROFRs in the Hon Hill Deeds. To reiterate, the ROFRs provide:

> In the event that the grantees herein desire to sell a part or the whole of this property to anyone other than the descendants of grantor herein, said part or whole of said property must be first offered to the grantor herein and <u>her adult descendants</u> and then to all the owners of the said twenty-two and fifty-nine-hundredths (22.59) acre, more or less, tract, exclusive of owners of lots in the subdivision in the northwest corner of said tract at One Dollar

- 16 -

($1.00) above the bona fide price offered, and said offerees shall have ten
(10) days to accept or reject said offer of sale.

(Emphasis added.)  The trial court expressly found that the phrase, "adult descendants,"
was not ambiguous.  The court stated:

> "Descendant" is defined in Black's Law Dictionary as "[s]omeone
> who follows in the bloodline of an ancestor, either lineally or collaterally.
> Examples are children and grandchildren." *Black's Law Dictionary* (11th
> ed. 2019).  In looking at the four corners of the document and the language
> contained therein, the Court finds "adult descendants" is not ambiguous.  The
> Court finds "adult descendants" in the context of the Hon Jr. ROFR and the
> Poynton ROFR refers to <u>all</u> of Mary E. Hon's descendants. The argument
> that "adult descendants" only includes Mary E. Hon's Children incorrectly
> limits the term "adult descendants"; if Mary E. Hon intended for the right of
> first refusal to only extend to her four children, she could have provided for
> such restrictions in the deeds.  Accordingly, the Court agrees with the
> position of Mr. Bacon that the term "adult descendants" in the Hon Hill
> Deeds is not limited to Mary E. Hon's Children.  Instead, the plain meaning
> of this term is any descendant of Mary E. Hon who has reached the age of 18
> at the time the ROFR in question is triggered.

On appeal, Defendants acknowledge that the plain meaning of "descendants"
includes all lineal descendants and that, taken alone, "descendants" would refer to Mary
Hon's children, grandchildren, great-grandchildren, and beyond.  Although they
acknowledge that "descendants" generally refers to multiple generations, Defendants insist
that in the ROFRs, Mary Hon used the word "adult" as a qualifier, limiting her descendants
to whom the ROFR was extended to those who were adults at the time of the 1953
conveyances—the Hon Children.  By contrast, under the trial court's interpretation,
"adult," while still functioning as a qualifier, means that Mary Hon's descendants were
required to become adults before the ROFR would be extended to them.

The trial court specified that in this context, an adult would be a descendant who
had reached the age of eighteen years.  An "adult" may be defined as "[s]omeone who has
attained the legal age of majority." *Adult*, BLACK'S LAW DICTIONARY (12th ed. 2024).  In
1953, the age of majority was twenty-one.  However, "[t]he Legal Responsibility Act of
1971 . . . reduced the age of majority for persons in [Tennessee] from twenty-one years to
eighteen years." *Whitt v. Whitt*, 490 S.W.2d 159, 160 (Tenn. 1973); *see* Tenn. Code Ann.
§ 1-3-113 (West January 1, 2021, to current) (providing that aside from certain exceptions
involving controlled substances, "any person who is eighteen (18) years of age or older
shall have the same rights, duties, and responsibilities as a person who is twenty-one (21)

years of age"). Therefore, setting aside for a moment whether the ROFRs are enforceable, we determine that the trial court correctly identified the age of majority as eighteen for purposes of exercising rights under the ROFRs.

Defendants posit that interpreting "adult" as describing those descendants who have reached the age of majority renders "superfluous" Mary Hon's use of the word "adult" because "real property sales to minors are void or voidable." In support, Defendants rely on a nineteenth-century Tennessee Supreme Court decision, *Scott v. Buchanan*, 30 Tenn. 468 (1850). The *Scott* Court determined that a contract for real property entered into by a minor is "voidable" (not void) and that the contract will be confirmed if after reaching the age of majority, the minor exercises the right to opt out of the contract within a reasonable time. *Scott*, 30 Tenn. at 477. We find no conflict between the *Scott* holding and Mary Hon's use of "adult" to clarify that descendants exercising their rights under one of the ROFRs must be adults. Indeed, the inclusion of "adult" may be interpreted as a means of avoiding confusion over the rights of minor descendants.

The trial court found that if Mary Hon had "intended for the right of first refusal to only extend to her four children, she could have provided for such restrictions in the deeds." Recognizing that Mary Hon certainly knew how to refer to the Hon Children specifically and by name in the Hon Hill Deeds, we agree. The trial court did not err in finding that "adult children" is not an ambiguous phrase in the ROFRs. We conclude that the phrase's plain meaning refers to all of Mary Hon's lineal descendants who have attained the age of eighteen years upon the triggering of a ROFR. *See Wal-Mart Stores E., L.P. v. N. Edgefield Organized Neighbors, Inc.*, No. M2013-01351-COA-R3-CV, 2013 WL 6706769, at *4 (Tenn. Ct. App. Dec. 17, 2013) ("[T]erms are not ambiguous merely because the parties disagree as to the interpretation of a given clause.").

Defendants emphasize that the phrase, "adult descendants," is unique in Tennessee case law. They correctly point out that the only state appellate decision that has included the phrase involved the Hon Children. *See Foster v. Hon*, 482 S.W.2d 139, 140 (Tenn. Ct. App. 1970). In *Foster*, the three Hon Children surviving at that time (Charles O. Hon, Jr.; Margaret Hon Snodgrass; and Elizabeth Hon Poynton) had exercised their right to bid one dollar more than a previously accepted sales offer for a parcel of real property owned by the estate of their deceased brother, Daniel B. Hon. *Id.* at 140. When the estate's administrator *ad litem* filed a petition to confirm the real estate sale, the surviving Hon Children filed an intervening petition seeking to reduce the amount they would pay for the property by the amount of a real estate commission that had been included in the previous offer. *Id.* In the petition, they described themselves as "the surviving adult descendants" of Mary Hon. *Id.* at 141. This Court stated in the procedural history that the intervening petitioners had filed "as the surviving adult descendants" of Mary Hon. *Id.* at 140. None of the parties in *Foster* raised an issue regarding whether Mary Hon had meant for the

relevant ROFR to extend to descendants beyond the Hon Children, and this Court accordingly made no such determination.

On appeal, Defendants state that the trial court "did not address *Foster* in its ruling" despite Defendants having referenced the decision in summary judgment pleadings. Defendants argue that the surviving Hon Children's characterization of themselves as "the" surviving adult descendants is significant, particularly because at least two of Mary Hon's grandchildren had reached the age of majority by the time the third-party offer was made in *Foster*. Inasmuch as the trial court found the meaning of "adult descendants" to be unambiguous and given that the *Foster* proceedings occurred several years after Mary Hon conveyed property through the Hon Hill Deeds, we discern no error in the court's decision not to address *Foster*. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 466 (Tenn. 2012) ("Courts ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances."). Moreover, we do not find the surviving Hon Children's characterization of themselves in *Foster* as "the surviving adult descendants" to be persuasive.

## 2. Benefit of the Grantor

Defendants also contend that Mary Hon's use of "adult descendants" in the ROFRs is ambiguous because she included the following provision in the 1953 deeds:

> The entire contract between the parties hereto is stated in this deed, and the restrictions and limitations are <u>solely for the benefit of the grantor</u>, and the question of further development, either of the property herein conveyed, or the properties of the grantor, or of other improvements, is no part of the consideration, to all of which the purchasers agree.

(Emphasis added.) Defendants maintain that for the ROFRs to be solely for Mary Hon's benefit, they must have expired with her death in 1967. The Bacons respond that Defendants have taken the phrase, "solely for the benefit of the grantor," out of context and have attempted to "fabricate an ambiguity." Defendants correctly point out that the trial court "did not explicitly address" their argument regarding this phrase. However, the court found no ambiguity in "adult descendants," indicating that it implicitly found that "solely for the benefit of the grantor" did not affect the meaning of "adult descendants."

The Hon Jr. Deed and the Poynton Deed each begin with consideration of $1.00 and "the enjoyment and pleasure resulting to [the grantor] in the making of this gift," along with the names of the grantor (Mary Hon) and the grantees (respectively, Charles O. Hon, Jr., and his wife and Elizabeth Hon Poynton and her husband). Next the deeds contain a detailed description of the property to be conveyed. From there forward, the two deeds are

substantively identical, beginning with six "restrictions," which may be summarized as: (1) public easements, (2) dwellings only, (3) exterior design of dwellings, (4) the ROFR (as quoted previously), (5) "neat appearance" of dwellings, and (6) maintenance of grounds. After the numbered paragraphs, each deed contains the previously quoted language regarding injunctive relief and the paragraph at issue here:

> The entire contract between the parties hereto is stated in this deed, and the restrictions and limitations are solely for the benefit of the grantor, and the question of further development, either of the property herein conveyed, or the properties of the grantor, or of other improvements, is no part of the consideration, to all of which the purchasers agree.

Therefore, all six "restrictions and limitations" are described as "solely for the benefit of the grantor." These would include public easements, described in the first restriction as serving "other properties of grantor <u>or her successors in title</u>" (emphasis added).

Defendants urge us to conclude that the restrictions were intended to expire upon Mary Hon's death. Instead, we conclude that read in context, the restrictions and limitations were for Mary Hon's "benefit" because she desired that they be included in the deeds. Like "the question of further development" that was "no part of consideration," these restrictions were not consideration, but they were part of her desire for the parcels. Mary Hon was conveying parcels of the Hon Hill Property to her children, with a right of first refusal to her "adult descendants," and she clearly envisioned how she wanted the property to be utilized. Therefore, we determine that the trial court correctly found that the phrase, "adult descendants," in the ROFRs unambiguously refers to Mary Hon's descendants who have reached the age of eighteen when one of the ROFRs at issue is triggered.

### 3. Obligations of Grantees

We now turn to Defendants' argument that the Hon Hill ROFRs were personal to the grantees of the original deeds. Defendants assert that because the ROFRs could only be triggered by a decision to sell on the part of one of the original grantees, the trial court erred by finding that subsequent grantees were obligated under the ROFRs even when the deeds under which they obtained property included language stating that the conveyances were "subject to" the restrictions included in the Hon Hill Deeds. The Bacons respond that the trial court properly found that the Hon Hill ROFRs were contractual obligations binding only on the original grantees <u>unless</u> (a) a new grantee agreed to be bound by incorporating the ROFR into a new deed or (b) the transferee of a gratuitous transfer accepted the property subject to the ROFR. Upon careful review of the record and applicable authorities, we determine that the Hon Hill ROFRs contractually bound the original grantees of the Hon

Hill Deeds but that subsequent grantees, even those who accepted gratuitous transfers, were not bound by the ROFRs unless they specifically agreed to be bound.

As this Court has explained:

> In general terms, a "right of first refusal" is the generic label commonly used to describe a contractual right to preempt another. 3 Corbin on Contracts § 11.3, at 469 (Joseph M. Perillo ed., 1996). The conventional right of first refusal "is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it." *Id.* at 470. At that point, the right of first refusal "ripens" into an option, and the preemptive right holder may exercise his preemptive right to create a contract based on the same terms that the owner is willing to accept from the third party. *See id.* at 470-71. However, the triggering of the right of first refusal is dependent on the language of the contract and varies with the facts of the case.

*Riverside Surgery Ctr., LLC v. Methodist Health Sys., Inc.*, 182 S.W.3d 805, 811-12 (Tenn. Ct. App. 2005).

The trial court specifically found regarding the enforceability of the Hon Hill ROFRs in subsequent deeds:

> In this case, the triggering event for the Hon Hill Deeds was . . . the grantee[s'] (in this case, her four children['s]) decision to sell part or all of the property given to them by their mother, Mary E. Hon. Upon the decision to sell, the right of first refusal was triggered into an option that Mary E. Hon and her adult descendants could exercise. Should Mary E. Hon and her adult descendants decline to exercise this right, the option would then be offered to the other Hon Hill Property owners prior to opening the offer to other interested buyers.
>
> The two deeds at issue under the pending summary judgment motions are the Hon Jr. Deed and the Poynton Deed. In May 1972 when Mr. Hon, Jr. sold the Hon Jr. Triangle to Elizabeth Poynton, it was subject to the Hon Jr. ROFR. As Elizabeth Poynton was Mr. Hon, Jr.'s sister, she was one of the individuals in the class that had the right to exercise the option of the Hon Jr. ROFR. While it is unclear from the record whether Mr. Hon, Jr. offered the property to his other sister, Ms. Snodgrass, or any other adult descendants of Mary E. Hon, the sale of the Hon Jr. Triangle to Elizabeth Poynton was in

line with the intent of grantor of the ROFR to keep the property within the family.

Importantly, however, *once this sale occurred, the ROFR was no longer a covenant or restriction that needed to be included in any subsequent deeds, absent an agreement or intention of the grantee to keep the Hon Jr. ROFR language in the deed such that a new right of first refusal was activated with the subsequent deed*. Such is the case here and this Court so finds and holds. Although the Hon Jr. ROFR was activated upon Mr. Hon, Jr.'s decision to sell part of his land, for reasons unknown to this Court, the deed conveying the Hon Jr. Triangle included the Hon Jr. ROFR language as part of the new deed. As a result, a new ROFR mirroring the language of the Hon Jr. ROFR was established that would be triggered upon Elizabeth Poynton's decision to sell her property.

The same analysis applies to Mr. Hon, Jr.'s decision to sell the 1972 Hon Jr. Property to Reid Murphey. Upon the decision to sell, the Hon Jr. ROFR was activated. It is unclear from the record whether Hon Jr. offered the property to any Mary E. Hon adult descendants or other Hon Hill Property owners prior to selling the property to Mr. Murphey. Nevertheless, the property was conveyed to Mr. Murphey and no action was taken to enforce the Hon Jr. ROFR. At that point, *the ROFR was no longer enforceable, as it had already been triggered and subsequently either ignored or not exercised*. As a result, the Hon Jr. ROFR no longer needed to be included in Mr. Murphey's deed.

Once again, however, the Hon Jr. ROFR language was included in Mr. Murphey's deed, therefore activating a new ROFR that benefitted the adult descendants of Mary E. Hon and fellow Hon Hill Property owners. This pattern apparently continued on with various parcels of the Hon Hill Deeds. The 2nd Berglund Trust Deed, which was effective on January 22, 2020, was a Quitclaim Deed that referenced the Poynton Trust Deed as the prior title. The Poynton Trust Deed reflected the transfer from the Poynton Trust to Ms. Sandlin and Mr. Poynton individually and did not specifically reference the Poynton ROFR. However, Ms. Sandlin and Mr. Poynton inherited this property from their mother, Elizabeth Poynton. There was no "sale" such that the Poynton ROFR was triggered when the property was passed to Ms. Sandlin and Mr. Poynton. The Order for Muniment of Title attached as Exhibit A the description of the property that passed to the Poynton Trust, of which Ms. Sandlin and Mr. Poynton were the co-trustees and sole beneficiaries. Exhibit A references the deed transferring the Hon Jr.

- 22 -

Triangle from Hon Jr. to Elizabeth Poynton and the Murphey/Poynton deed, both of which referenced the Hon Jr. ROFR. As a result, Ms. Sandlin and Mr. Poynton were transferred the properties and all of the rights and restrictions that were owned by their mother at her death, which included the restrictions of the Hon Jr. ROFR.

With respect to the Berglund Trust Parcel, the 2nd Berglund Trust Deed reflecting the sale from Ms. Sandlin and Mr. Poynton references the Poynton Trust Deed, which necessarily included the Hon Jr. ROFR, as the right of first refusal that was included in the deeds transferring the property to Elizabeth Poynton had not been triggered because the grantees had not sold the property. As a result, pursuant to the terms of the Hon Jr. ROFR, Ms. Sandlin and Mr. Poynton were obligated to offer the property to Mary E. Hon's adult descendants, then to the Hon Hill Property owners prior to offering the property to the Berglunds.

The same analysis applies to the property located at 4 Rivervista. Ms. Sandlin and Mr. Poynton acquired the property through the order of muniment of title. All of this property, as owned by Elizabeth Poynton at her death, was subject to either the Hon Jr. ROFR or the Poynton ROFR. When Ms. Sandlin and Mr. Poynton transferred the property out of the Poynton Trust to themselves individually in October of 2019, the deed did not reference either the Hon Jr. ROFR or the Poynton ROFR. However, all of the parcels contained in 4 Rivervista contained either the Hon Jr. ROFR or the Poynton ROFR at the time of Elizabeth Poynton's death and no sale occurred that triggered either ROFR. Accordingly, both the Hon Jr. ROFR and the Poynton ROFR are still in place such that Mary E. Hon's adult descendants, including but not limited to Jennifer Bacon and Pryor Bacon, III, have the option to exercise the ROFR on the 4 Rivervista Property.

(Footnotes omitted.)

Although the trial court carefully delineated the chains of title and clearly set forth its reasoning, we disagree on three crucial points: (1) the meaning of the phrase, "the grantees herein," as used in the Hon Hill ROFRs; (2) the feasibility of a general "subject to" provision to burden a subsequent grantee with one of the ROFRs; and (3) the effect of a gratuitous transfer in this situation.

First, Defendants advance the position that in the Hon Hill ROFRs, the phrase, "the grantees herein," created a personal obligation for the original grantees of the Hon Hill Deeds but not for subsequent grantees, and we agree. Again, the Hon Hill ROFRs provide:

In the event that <u>the grantees herein</u> desire to sell a part or the whole of this property to anyone other than the descendants of <u>grantor herein</u>, said part or whole of said property must be first offered to the <u>grantor herein</u> and her adult descendants and then to all the owners of the said twenty-two and fifty-nine-hundredths (22.59) acre . . . .

(Emphasis added.)

The respective language of the ROFRs does not expand on "grantees herein" to include heirs, assigns, subsequent grantees, or subsequent transferees who would be bound by the ROFRs. Furthermore, upon examining the plain language of the ROFRs, we find the phrase, "grantees herein," to be comparable to "grantor herein." Each refers specifically to the parties who executed the Hon Hill Deeds. No party has argued, and the trial court did not find, that the "grantor herein" could refer to anyone other than Mary Hon even if the ROFR were enforceable in a subsequent deed. It is logical that "grantees herein" is comparable to "grantor herein" and that both refer personally to the individuals named in the Hon Hill Deeds. *See, e.g.*, *Hillis v. Hillis*, 875 S.W.2d 273, 276 (Tenn. Ct. App. 1993) (determining that a covenant stating that "'the grantees herein are not to operate, build, a service station or sell any gas'" "clearly affect[ed] the immediate grantees only").

Second, we disagree with the trial court's finding that each time a deed contained a provision stating that the conveyance was "subject to" the restrictions of the Hon Hill Deeds, the ROFR was renewed even if it had been previously rendered unenforceable. For example, in 1972, Charles O. Hon, Jr. ("Mr. Hon, Jr."), by then a widower, sold two portions of the Hon Jr. Property. In May 1972, he sold a portion known as the "Hon Jr. Triangle" to his sister, Elizabeth Hon Poynton, and in December 1972, he sold the remaining portion to Reid Murphey, who was not a descendant of Mary Hon and was not one of the Hon Hill Neighbors. The May 1972 deed conveying the Hon Jr. Triangle to Ms. Poynton ("the Hon Jr. Triangle Deed") contained the following paragraph referencing the restrictions in the Hon Jr. Deed:

SUBJECT to restrictions and conditions as set out in deed of Mary E. Hon to Charles O. Hon, Jr., and wife, by deed recorded in Book 1095, page 681, in the Register's Office of Hamilton County, Tennessee.

The trial court determined that "[a]s a result" of this language, "a new ROFR mirroring the language of the Hon Jr. ROFR was established that would be triggered upon Elizabeth Poynton's decision to sell her property."

Regarding the conveyance from Charles O. Hon, Jr., to Mr. Murphey, the trial court found that the ROFR would have been unenforceable except that "[o]nce again . . . the Hon Jr. ROFR language was included in Mr. Murphey's deed, therefore activating a new ROFR that benefitted the adult descendants of Mary E. Hon and fellow Hon Hill Property owners." The December 1972 deed conveying a portion of the Hon Jr. Property to Mr. Murphey ("the Hon-Murphey Deed") contained a paragraph identical to the one in the Hon Jr. Triangle Deed, stating that it was "subject to" the "restrictions and conditions" set forth in the Hon Jr. Deed, which it referenced by book and page number with the register of deeds.

Instead, under the circumstances of this case, we conclude that even with the "subject to" provision referring to one of the Hon Hill Deeds, a subsequent deed could only obligate a subsequent grantee if that grantee had been one of the grantees named in the Hon Hill Deeds. This is because the obligation of the ROFRs was personal to those grantees. Therefore, because Ms. Poynton was one of the grantees named in the 1953 Poynton Deed, the "subject to" provision in the Hon Jr. Triangle Deed did obligate her by reference, and the trial court properly found that she would have been obligated to extend the ROFR to Mary Hon's adult descendants and then to the Hon Hill Neighbors if she had triggered the ROFR by accepting an offer to sell. However, inclusion of the "subject to" provision in the Hon-Murphey Deed did not obligate Mr. Murphey because he was not one of the original grantees in the Hon Hill Deeds. *See generally*, 84 A.L.R. 2d 780 § 2 ("The general conclusion consequently to be drawn from the cases is that the fact that a conveyance is made 'subject to' restrictions set forth in some other deed or instrument referred to will not, without more, make the restrictions applicable to the property conveyed if in fact the restrictions do not otherwise apply thereto.").

Third, the trial court found that a gratuitous transfer did not trigger a ROFR and therefore left the ROFR intact and enforceable. We agree that one of the Hon Hill ROFRs could only be triggered by acceptance of an offer to <u>sell</u> the subject property (rather than to give or bequeath the property). *See Issacson v. First Sec. Bank of Utah*, 511 P. 2d 269, 272 (Idaho 1973) ("Where the lessor has indicated his desire to give and not to sell the property subject to the right of first refusal, it cannot be said that the condition precedent to the ripening of the right of first refusal has been fulfilled.") (footnote omitted). However, we see nothing to prevent the ROFR from expiring on its own terms and becoming unenforceable while the property is under the control of the donative transferee without the ROFR ever having been triggered. *See, e.g.*, *id.* (determining that the donative transferee's obligation to extend a right of first refusal to a lessee terminated on its own terms by expiration of the lease without the right of first refusal ever having been triggered). Here, neither the trial court nor the Bacons have offered any authority, and we have found none, to support the proposition that a right of first refusal must be triggered before it can be allowed to expire by some other means.

In this case, although Ms. Poynton was obligated by the reference in the Hon Jr. Triangle Deed to the Hon Jr. ROFR, she maintained ownership of that property until she died in July 2011. Ms. Poynton also maintained ownership of the parcel initially conveyed to her by Mary Hon, wherein Ms. Poynton was obligated by the Poynton ROFR. Through her last will and testament, Ms. Poynton bequeathed all the subject real property belonging to her to the Elizabeth H. Poynton Revocable Living Trust ("the Poynton Trust") with her children, Individual Defendants, as co-trustees. This bequest also included three tracts of the property conveyed by the 1972 Hon-Murphey deed, which Ms. Poynton had purchased in February 1976 via warranty deed conveyed by Mr. Murphey and his wife, Sybil Murphey ("the Murphey-Poynton Deed"). In December 1972, Mr. Murphey had conveyed the property described in the Hon-Murphey Deed to himself and his wife as tenants by the entirety ("the Murphey-Murphey Deed"). Like the Hon-Murphey Deed, both the Murphey-Murphey Deed and the Murphey-Poynton Deed included a "subject to" reference to the Hon Jr. ROFR.

Therefore, although the Murpheys were not obligated by the Hon Jr. ROFR, when Ms. Poynton entered into the Murphey-Poynton Deed, she was obligated by its reference to the Hon Jr. Deed because she was one of the original grantees of the Hon Hill Deeds. The transfer of Ms. Poynton's properties to the Poynton Trust was accomplished through a muniment of title order entered by the probate division of the chancery court and duly recorded with the register of deeds in October 2012. Regarding the gratuitous transfer of Ms. Poynton's property to the Poynton Trust, the trial court stated:

> There was no "sale" such that the Poynton ROFR was triggered when the property was passed to [Individual Defendants]. The Order for Muniment of Title attached as Exhibit A the description of the property that passed to the Poynton Trust, of which [Individual Defendants] were the co-trustees and sole beneficiaries. Exhibit A references the deed transferring the Hon Jr. Triangle from Hon Jr. to Elizabeth Poynton and the Murphey/Poynton deed, both of which referenced the Hon Jr. ROFR. As a result, [Individual Defendants] were transferred the properties and all of the rights and restrictions that were owned by their mother at her death, which included the restrictions of the Hon Jr. ROFR.

We agree with the trial court's finding that no "sale" (or acceptance of a purchase offer) triggered the Poynton ROFR or the Hon Jr. ROFR as to the property owned by Ms. Poynton. However, we disagree with the court's finding that the gratuitous transfer obligated Individual Defendants, as co-trustees of the Poynton Trust, to follow the requirements of the ROFRs. Neither the Poynton Trust nor either of the Individual Defendants was named as one of the "grantees herein" in the Hon Hill Deeds. Because

Ms. Poynton's obligation under the ROFRs was personal to her, we determine that the ROFRs expired as to her property when she died in July 2011. Likewise, although Individual Defendants inherited the property that they subsequently conveyed to the Berglund Trust from Ms. Poynton, she was not a party to that transfer. Therefore, no ROFR is enforceable as to the Berglund Trust Parcel.

For the reasons stated above, we conclude that the trial court erred in finding that the Hon Jr. ROFR and the Poynton ROFR remained enforceable as to Individual Defendants after Ms. Poynton's death. We therefore reverse the trial court's finding that the subject ROFRs are enforceable against Defendants.

## 4. Remaining Arguments

Defendants also argue that the trial court erred by declining to find that the subject ROFRs are unenforceable because they violate the statutory and common law rule against perpetuities and because they pose an unreasonable restraint on alienation. Having determined that the ROFRs are unenforceable because they were personal to the grantees of the Hon Hill Deeds and had therefore expired, we further determine Defendants' remaining arguments to be pretermitted as moot.

## VI. Specific Performance

Defendants have raised an issue regarding whether the trial court abused its discretion by awarding to Mr. Bacon specific performance to purchase 4 Rivervista for $1,000,001. *See Abbott v. Abbott*, No. E2015-01233-COA-R3-CV, 2016 WL 3976760, at *6 (Tenn. Ct. App. July 20, 2016) ("Specific performance is an equitable remedy which is not available as a matter of right, but is discretionary with the trial court depending on the facts of the case."). Inasmuch as we have reversed the trial court's finding that the subject ROFRs are enforceable, we also reverse the order of specific performance.

## VII. Attorney's Fees on Appeal

In the conclusion of their appellate brief, the Bacons request an award of attorney's fees on appeal pursuant to the attorney's fee provision in the Hon Hill Deeds. Defendants respond that the Bacons are not entitled to attorney's fees on appeal because the deed provision relates to injunction proceedings. The Bacons did not raise their request for an award of attorney's fees on appeal in their statement of the issues. *See Hodge v. Craig,* 382 S.W.3d 325, 335 (Tenn. 2012) ("[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4).").

Our Supreme Court has recently held that when an issue is not included in a statement of the issues, "when the arguments set forth in an appellate brief fall within the scope of the stated issues, and the issues and argument taken together clearly present the grounds for appellate relief, the reviewing court should review the substantive issues." *Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024). However, here the Bacons have failed to argue in support of their request or explain why it should be granted on appeal when the deed provision refers solely to fees incurred seeking injunctive relief. We therefore deem the Bacons' request for attorney's fees on appeal to have been waived.

## VIII. Conclusion

For the reasons stated above, we reverse the trial court's grant of summary judgment in favor of the Bacons and the trial court's order of specific performance against Defendants. We also reverse the trial court's denial of Defendants' motion for summary judgment on their request for declaratory judgment on Mr. Bacon's claims. As to the ROFRs specifically at issue on appeal, the Hon Jr. ROFR and the Poynton ROFR, we declare that the ROFRs have expired and are unenforceable. We note that the trial court's judgment regarding Defendants' claims against the third-party defendants is not at issue in this appeal, and accordingly, we render no decision concerning those claims. This case is remanded to the trial court for enforcement of this judgment and collection of costs below. Costs on appeal are taxed to the appellees, Pryor E. Bacon, III, and Jennifer Hon Bacon.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE